PALM CORPORATION, a Florida Corporation, v. ARTHUR L. WALTERS and LOUISE WALTERS, his wife, and FRANCES K. POWELL and GEORGE C. POWELL, her husband.

4 So. (2nd) 696
En Banc
Opinion Filed November 21, 1941

*Henry D. Williams, Alvin Cassel,* for Appellant;

*N. Vernon Hawthorne* and *Allen Clements* for Appellees, Arthur L. Walters and Louise Walters, his wife, and *Aronovitz & Goldstein* for Appelleees, Frances K. Powell and George C. Powell, her husband.

PER CURIAM.—This is an appeal by one of the defendants from a final decree below enjoining the continuance of acts held to be a nuisance.

On May 1, 1940, Arthur L. Walters and Louise Walters, his wife, filed their Bill of Complaint against the appellant corporation and Frances K. Powell and George C. Powell, her husband. This bill alleged that in 1929 the plaintiffs had bought property and erected thereon a building known as the Walters Building, at 377 Lincoln Road on Miami Beach, Florida; that a part of this building had been built especially for offices for doctors (one of whom was the plaintiff)

and since 1930 had been and was at the filing of the bill being used for that purpose; that the rest of the building had been and was being used as living quarters and for shops and offices; that in 1939 the Palm Corporation caused the Albion Hotel to be built next to the Walters Building; that that section of the Albion Hotel known as the Patio Restaurant, a two story building, is separated from the Walters Building by one or two inches; that the said Patio Restaurant has dining room and kitchen facilities sufficient to serve the patrons of the Albion Hotel, which has approximately 100 rooms; and that the Patio Restaurant is run by Frances K. Powell, one of the defendants to the bill of complaint. Plaintiffs then alleged as follows, showing the injury claimed:

"9. That ever since the opening of said kitchen and its operation as aforesaid under the management and supervision of Frances K. Powell, defendant, as aforesaid, noxious, unhealthful, damaging, disagreeable, and offensive odors or stenches, emanating and issuing from said kitchen, polluted the air around and in the said WALTERS BUILDING, rendering it unpleasant, uncomfortable, unhealthy and unfit for human habitation and particularly unfit for the special purposes for which said WALTERS BUILDING was constructed and designed as aforesaid.

"10. That ever since the opening for business of said dining room, patio dance pavilion, and kitchen, in January, 1940, and their operation in connection with and as a part of said Hotel Albion, said places have opened daily about 7:30 A. M. and closed about 11 P. M.; that the noise made in the operation of said kitchen—the yelling orders, the clanging of kitchen utensils and table ware, the clattering of dishes—all

made in the haste of preparation of food and quick service for patrons, continues practically all the time the kitchen is opened; that the noise made in the operation of the dining room—the yelling of orders, the setting of tables, the gathering of the dirty dishes, the sweeping and mopping—is practically continuous from early morning until late at night; that the noise made in the operation of the patio dance pavilion where the orchestra plays nightly from 7 to 11 is augmented by the manifestations of stimulated spirits of the patrons, pepped by the intoxicating liquors there served and sold to them; that all the aforesaid noises emanating and issuing from said kitchen, dining room, and patio pavilion can be plainly heard in all the east side of the WALTERS BUILDING and in all the rear of said building, and at times throughout the building.

"11. That in addition to the foregoing noises emanating from said patio dancing pavilion, are the noises from the operation and conduct of bingo games there held on several nights of each week; that the calling of the numbers by the announcer, the yelling of "BINGO," the declaration of excited winners and the laughter and banter of the players, all can be heard plainly throughout the greater part of the said WALTERS BUILDING: that the said operation of said bingo games are in violation of the laws of Florida governing gambling.

"12. That the said buildings constituting the premises known as the ALBION HOTEL, including the said office buildings and kitchen and dining room, are air-conditioned but the operation of air conditioning machinery and equipment causes continuous loud annoying and disturbing noises to be made by that

portion of said machinery and equipment located in the west walls of said buildings being within about three feet of the east walls of said WALTERS BUILDING: that, though said air-conditioning machinery and equipment are not operated at all times, it makes when in operation, noises that can be heard throughout most of the WALTERS BUILDING: that said air-conditioning machinery is evidently defective.

"13. That many patients of the plaintiff, ARTHUR L. WALTERS, while waiting for medical attention, or being given medical treatment in the offices of said plaintiff in said WALTERS BUILDING, have complained of the aforesaid odors and noises, and some of his patients have left his offices without treatment because of said noises and odors; that in taking a electro-cardigram of patient's heart it is necessary that the condition of the patient be normal and generally the patient is kept quiet for a period of time in the office before the electro-cardigram is made, likewise in the making of basal metabolism tests; that by reason of the aforesaid odors and noises it has been necessary in several instances for your plaintiff, ARTHUR L. WALTERS to have to take the metabolism machine to the homes of different patients to make such metabolism tests; that in carrying on his medical practice in his offices in the WALTERS BUILDING he has many consultations a day with his associate in practice, DR. DAVID W. EXLEY, and the said noises from the said kitchen and dining room greatly interfere with same and with their interviews and examination of patients.

"14. That a number of plaintiffs' tenants have repeatedly complained to plantifs as their landlords, of both the aforesaid odors and noises and disturb-

ances that so materially interfere with the comforts and pleasures to which they are entitled in the peaceable enjoyment of said premises.

"15. That the tenants of plaintiffs occupying the apartments and hotel room on the second floor have and are constantly complaining to plaintiffs of the aforesaid odors and noises.

"16. That the annoying and disturbing noises emanating from the air-conditioning machine before mentioned, could be eliminated as plaintiffs are informed and believe, by proper installation of said machinery and a proper insulation of the walls of the room in which said machinery is used." . . .

"18. That accumulative to the noises issuing from the said hotel premises are the announcements that are being often and from time to time made, over the loud public speaker system installed and in use on said premises, said announcements being plainly heard in the said WALTERS BUILDING.

"19. That further accumulative noises issuing from said hotel premises are the noises made by those using the cabanas or bath and dressing rooms before and after going into the swimming pool; said swimming pool customers laughing and talking and bantering while so using said dressing rooms as to be heard in the WALTERS BUILDING; that the windows of said dressing room opening toward the WALTERS BUILDING are not shaded and the nude customers are plainly visible to the female tenants occupying the apartments on the second floor of the WALTERS BUILDING, one of such male swimming pool customers having deliberately exposed himself repeatedly to female tenants by whistling and yelling to them to attract their attention.

"20. That one of the most disturbing noises issuing from said kitchen and restaurant of defendant, is the loud language of the defendant, FRANCES K. POWELL, in speaking to her employees, said language being often profane, vulgar and offensive and rendered in a loud penetrating fog-horn voice, which carries throughout the greater portion of the said WALTERS BUILDING." . . .

"24. That the conducting of said hotel dining room, kitchen and patio dancing pavilion in the manner aforesaid constitutes a private nuisance as to plaintiffs, and is causing, and, unless restrained, will continue to cause irreparable injury to the plaintiffs, and the plaintiffs are without any remedy at law."

The bill then prayed that a temporary injunction issue restraining these noises, odors and acts and that it be made permanent on final hearing.

Motions to dismiss the bill were filed by the respective defendants and these motions were denied. Answers were filed which in substance denied the existence of a nuisance, the defendants' liability therefrom, and affirmatively stated that the hotel, dining room, kitchen, and all the machinery and equipment located on the premises and operated in conjunction to them were of the best, quietest and most efficient possible to obtain and that all were operated reasonably, in as orderly a manner as any other establishment and its equipment might be expected to run and without derogation to the rights of the plaintiffs.

On the hearing some five hundred pages of testimony were taken in the cause, some before the Circuit Judge and the rest before a Special Master duly appointed. On Jan. 27, 1941, at the conclusion of this

hearing and after the Report of the Special Master was filed, the court entered final decree in the cause granting the injunction prayed. This final decree followed, in substance, the recommendations of the special master in his report. The final decree set out *in haec verba* the bill of complaint, omitting the formal parts, and then subsequently stated:

"The court finds that the defendants have been guilty of maintaining a nuisance contrary to law on the premises described in the bill of complaint and known as the Albion Hotel at Miami Beach, Florida, and they should stop, desist, and refrain from the further carrying on and maintenance of said nuisance."

This order of injunction then followed:

"That the said defendants and each one of them and any person in the world acting by, through or under the said defendants are each and all hereby restrained, enjoining and prohibited from doing all or any one of the acts set forth and described in the bill of complaint by the plaintiffs and alleged therein to be a nuisance, and from making or permitting to be made on the hotel premises of the Albion Hotel, described in the bill of complaint, the dining room thereof, kitchen and patio dance pavilion or any part thereof, noises that may be annoying or disturbing to those occupying the building known as the WALTERS BUILDING, Miami Beach, Florida, and from permitting or allowing obnoxious odors to escape from the kitchen on the premises of said hotel to the said Walters Building or any part thereof."

On February 18, 1941 Notice of Entry of Appeal from the final decree was filed by the Palm Corporation bringing the cause here for review.

There can be no question of the general principal of law upon which the injunction was issued. The case of Mayflower Holding Company, Inc., v. Warwick, 196 So. 428, text 429 (Florida) state the principle as follows:

"In the case of Mercer v. Keynton, 121 Fla. 87, 163 So. 411, 413, this court said: 'An owner or occupant of property must use it in a way that will not be nuisance to other owners and occupants in the same community. Anything which annoys or disturbs one in the free use, possession or enjoyment of his property or which renders its ordinary use or occupation physically uncomfortable may become a nuisance and may be restrained. Henderson v. Sulliven, (6 Cir.), 159 F. 46, L.R.A., N.S., 691; Bohan v. Port Jervis Gas-Light Co., 122 N. Y. 18, 25 N.E. 246, 9 L.R.A. 711; Huddleston v. Brunett, 172 Ar. 216, 287 S.W. 1013; Wright v. Lyons, 224 Mass. 167, 112 N.E. 876; Prendergast v. Walls, 257 Pa. 547, 101 A. 826; State, *ex rel.* National Oil Works of La. v. McShane, 159 La. 723, 106 So. 252.' "

" 'See Bartlett v. Moats, 120 Fla. 61, 162 So. 477; 46 *Corpus Juris* 681-3, pars. 53, 55, 56, 58; Edmunds v. Duff, 280 Pa. 355, 124 A. 489, 33 A.L.R. 719; Stodder v. Rosen Talking Machine Co., 241 Mass. 245, 135 N.E. 251, 22 A.L.R. 1197.' "

Upon a careful consideration of the record it is concluded that the chancellor was justified in finding that the nuisance alleged existed in fact. It is true there is considerable conflict in the testimony but there is ample evidence to sustain the decree so far as the existence of a nuisance was determined.

Appellant corporation contends, however, that the bill of complaint is insufficient on its face as to it

because it does not sufficiently charge it with responsibility for the alleged acts; and further, that the appellant, Palm Corporation, cannot be charged with the acts of the other defendants, who, it appeared below, were lessees of the corporation. It is apparent from a perusal of the quoted sections of the bill of complaint that allegations are there made of acts done by each defendant contributing to the nuisance and these allegations are amply definite as to the appellant and the other defendants.

Appellant's final contention is that the decree is insufficient and unenforceable because it does not set forth with sufficient specification the acts or conduct of the respective defendants, as occupants of separate parts of the building, which are to be restrained.

The order is too definite in expressing its application to the particular defendant who is the appellant here and the statements of the acts are not sufficiently clear to apprise the defendants below what they must refrain from doing.

Acts or things enjoined as nuisances should be specified with reasonable definiteness, considering their nature and character, for if not sufficiently definite in statement the decree may not be sustained. See Am. Jur. 473 (Sec. 300) ; 32 C.J. 368 (Sec. 620) and cases cited. See also Guaranty Co. v. Luning, 95 Fla. 103, 116 So. 9. It would be impossible to state a precise rule to follow in applying this requirement, for some things, in reason and justice, may not be capable of a statement as exact as others, however, the final decree does not appear to be sufficiently definite in its description of the acts enjoined or in its specification of those acts which are chargeable to the respective ocupants of the building. It is true the decree follows

the allegations sustained by the evidence, and then enjoins defendants from making or permitting to be made on the hotel premises," . . . noises that may be annoying or disturbing to those occupying the building known as the Walters Building, Miami Beach, Florida . . .", but this provision of the decree is entirely too general. The decree should be so definite that a violation by either occupant could be adjudicated and determined with accuracy.

The decree is reversed with directions to revise it so that it will conform to the views here given.

BROWN, C. J., WHITFIELD, TERRELL, BUFORD, CHAPMAN, THOMAS and ADAMS, J. J., concur.